The last case this morning is 415-0798, People v. Newton. Before I begin, I want to mention we asked everyone to be here a half hour early, and you were. We appreciate it, because sometimes we can get started. So I want to thank you, Ms. Wilhelm. Okay, then, Ms. Wilhelm, you may proceed. May it please the court? Counsel. Counsel. I'm Susan Wilhelm with the Office of the State Appellate Defender, and I represent the defendant, Jafariah Newton. Mr. Newton was convicted of unlawful delivery of cocaine with an aggravated count for delivery within 1,000 feet of a church. I'm arguing today the first argument that the state did not meet its burden of proof that he knowingly participated in this delivery. Newton was homeless, and he sometimes lived with Richard Suggs. Suggs wouldn't leave Newton alone in his home, so Newton accompanied him on all of his errands. And Suggs admitted that he sold cocaine to Rodriguez on the day in question. Because Rodriguez had been caught up in the earlier drug buy, he was cooperating with the police, and they had set up video-only surveillance in his apartment. They gave him $150 in recorded buy money, a $100 bill, two 20s, and a 10. It's uncontested that Newton is on the tape. He enters Rodriguez's apartment with Suggs and picks up money on a table or ottoman near Rodriguez. The three men, Rodriguez, Suggs, and Newton, walk out of range to the left opposite of the door. However, Newton walks back into camera range, and he's alone on the camera until the other men reenter the frame. Then Suggs and Newton leave together. Suggs testified and admitted that he sold the cocaine to Rodriguez, but that Newton was not in the kitchen and was not aware that a drug transaction occurred. Suggs specifically repudiated his post-arrest statement that Trefaria knew what was going on. As Suggs and Newton walked away, a police officer approached them. When ordered to the ground, Newton complied, then rolled and threw some money into the sewer. That money was covered immediately by Officer Shively and given to Officer Brown, who wrote up a report two weeks later and then testified at trial that the recovered bills included $250 bills that matched the serial numbers on the buy money. And then he corrected that testimony later when he was shown the original report. Based on these facts, the state failed to prove Trefaria Newton guilty of unlawful delivery of a controlled substance because there is no evidence that Newton shared a common intent with Suggs to sell drugs on January 1, 2015. The state didn't have a witness to this transaction because their confidential informant, Rodriguez, was uncooperative and had left the country. And although Newton was in possession of this money at his arrest, it's questionable whether it was the marked money from the transaction. And even if it was, it doesn't establish that he assisted in the planning of this offense and should be held accountable for the sale. The state argued that they were working together, that Suggs had the drugs, and the defendant took the money. But the state has to prove that before or during the commission of the offense, he had the intent to facilitate this offense. And here there's no proof of that intent to aid. And the fact that he accompanied Suggs does not establish he knew about the drug transaction and wanted to assist him. And the state will probably argue that Newton's attempt to throw the money away supports an inference of guilt. But here, accountability attaches only before or during the commission of the offense. And the fact that he developed knowledge later is not proof of an intent to aid. What knowledge did he develop later that explains his throwing the money down the drain? As he told the police in his interview, when the police were following him, he felt that this might be tainted because he didn't basically, it was something that he had been told to pick up from Suggs, and he didn't know where it came from and he didn't know what was, he implied he didn't know if something was in it. Because it wasn't his originally, it made him uncomfortable to be holding it when stopped by the police. And again, that he later became concerned that he might have picked up something illegal doesn't establish that he knowingly planned and participated in this transaction. And I would just ask that because the state failed to prove beyond a reasonable doubt that he knowingly participated in this delivery, that his conviction be reversed. Thank you, counsel.  So these were even, this was even the same money? Yes, the buy money. What supports that assertion? Okay, it's in the record, the officer that prepared the buy money said that it was a $100 bill, $220. Well, he's an heir and he corrects himself, but don't the serial numbers match? Or the markings? He testifies at trial, yes, that everything matches. But his original report recorded this money as being completely different bills. Not completely. Well, two $50 bills instead of a $100 bill. But the serial numbers match. That's pretty significant, isn't it? But his recollection is that the amount of the bills, that is whether the denomination, whether it was $50 or $100, is really less significant than your bills matching the serial number. And even if your honors accept that my client had the buy money, it doesn't mean though that he did participate in the sale, when the explanation is he was asked to pick up the money in order to buy alcohol for subs. So, again, I would ask the disconviction be vacated. Thank you, counsel. Thank you. Mr. Manchin. May it please the court, counsel. Counsel. The question on appeal is whether any reasonable trial or fact, taking the evidence in the light most favorable to the state, could find guilt beyond reasonable doubt. The argument the defendant makes today could be simply taken the closing argument from the trial and presenting it here today as the exact same argument. And the jury below simply didn't buy. The defendants claim that he was just simply an innocent bystander. The claim as far as his possession of the buy money, and it clearly was the buy money because as your honors noted, the testimony was the serial numbers on the money the defendant tried to throw away matched serial numbers that had been recorded earlier. That proves that the defendant had buy money. The claim was that he was given the money by subs as they left the house to go buy alcohol and that for some unknown reason he got suspicious when the police called him and he decided to throw the money away. But the claim that he was handed the money as he left was refuted by the tape, the videotape of the thing where he's handed the money by the buyer. This is not just picking up the money from the table. He's shown being handed the money by the buyer. Then he leaves the house with the money and tries to throw it away. A reasonable jury based upon that evidence can conclude that he was a willing, knowing, active participant or at the very least was accountable for the actions of his co-defendant. This is a defendant who accompanied the same dealer to the same address on two separate occasions, and the jury was supposed to believe that this guy is just simply an innocent bystander who for some unknown reason decided to throw away $150 when confronted by the police. The jury was not required to believe that testimony or that inference. The evidence was he was there at the deal. He was handed the money by the buyer. He left with the money that serial numbers matched and tried to throw it away. The jury concluded that this is not the action of an innocent bystander, but someone that was in fact involved in the transaction. And there's simply no reason for this court to substitute a judgment without a jury on that question. What about the sufficiency of the evidence on the location within 1,000 feet of a church? I think under Sims that the testimony was sufficient. In Sims, this court held that simply stating that the name of the church was sufficient to establish that it was a church on a dated fence. But we have more than that. We have here a police officer who is familiar with the area, who's been by the church in both his professional and his personal experience, and knows from personal experience that this is in fact a church and was in fact a church in the days. Any complaints as to the details of how he knew it was a church or whether details of what time on Sunday are the services held? That is a question of foundation for the is knowledge. And that's a question that was never raised in the trial court regarding how does this officer know that this particular. It doesn't have to be raised for an issue to arise, whether or not the evidence is sufficient to prove it beyond a reasonable doubt, does it? No, it doesn't have to be raised, but it is a question as to the foundation. And since the trial, the officer testified without any questions or any objections, saying in my personal experience, my personal knowledge, this place, First Christian Church is in fact a church and was in operation on the date of this offense. I've seen cars there regularly, whatever. I don't remember the exact testimony. That is sufficient to allow a reasonable jury to conclude that First Christian Church is in fact a church. It was a church on that particular date. I hope that prosecutors in the future take into account that there are churches springing up all across America in storefronts, particularly in Bloomington Normal, and that the former temple, which still looks like the Moses Montefiore Temple, is a residence in Bloomington Normal rather than a church, and that these storefront places don't necessarily have crosses out in front, and there might be church, if you can read it on the gold lettering on the window, because it was previously an insurance agent's office or something like that. I'm unable to comprehend why police officers and state's attorneys can't do a better job of demonstrating this important fact, though I don't disagree with you regarding the facts of this particular case. The facts of this case and the present. You're correct, but there could be other cases where there could be a closer question. There should never be a closer question. That's the point. It's something that's so easily verifiable. Picking up on Justice Connick's point, and it's something very troubling, because we're talking some serious stuff here. Going back to the Middle Ages, seemingly, when I was a prosecutor, and I remember, and I have some sympathy for prosecutors in that they have to prove things beyond a reasonable doubt in the elements. Sometimes it's very hard. It requires effort to gather evidence, and it's a difficult proposition, and I have some sympathy for prosecutors who are trying, perhaps, to cut corners. But whatever minimal sympathy I might have, thinking back to those days, is entirely gone here. I just can't understand it. When, as this court explained in Sims three years ago, how easy it would be to just get someone affiliated with the church. You know, is this a church? Or if it's a normal church with the steeple and everything, you take a picture of it on that page. But you don't even have to do that. Just say, Pastor Smith, an issue in this case is, is this building at First and Maple Street a church? It's your church. We need you to come in and offer all of 93 seconds' worth of testimony. But that's just to identify who he is. You know, how, I was thinking about this as I was considering this case, and I literally, going now half a century almost of experience in the criminal law, I can't think of an element of a crime that's easier to prove, and yet we have this constantly arising. Just call the guy from the church, the pastor or any official from a church to say, yeah, I'm so and so, the pastor or official with the church. It's a church. We have services on Sunday, et cetera. No further questions. And somehow we keep on getting these cases where Officer Ock shows up and says, yeah, it's a church because I see cars parked there. Why are we called upon to have to do this? Well, because that would be. That's a rhetorical question. In this case they did more because they did establish that this guy was really familiar with the area and really did know that this was a church. Well, the evidence here is not bad, but you may have seen there was this recent decision out of the First District where Justice Pierce waxed rhetorically about evidence not as good as this and saying, what are we talking about here? How do we know this building is a church? Why are we even dealing with this kind of an issue? And he raised lots of good points. And the problem is it seems that the prosecutors don't even ask this question. Why are we dealing with cops' familiarity with this particular building as opposed to, as Justice Appleton says, the 30 seconds to establish this element? As I say, and I don't think it's hyperbole, I literally can't recall ever encountering an element of an offense that's easier for the state to prove. But I guess like we were discussing with Ms. Wilhelm in the last case, we're just not getting the message across somehow. We consider maybe the good news is it's keeping us all employed. Because I think if it was all done right, the state would be looking for layoffs. The other thing is that when you don't use all your time in oral argument, it gives us the chance to paint. Yes, to muse about the angst of the world. Thank you, Counselor. Ms. Wilhelm, anything else? Okay. Thank you. I just want to address the point of this building being active as opposed to whether this building was active as a church. Everything that Detective Birnbaum testified to was that he knew this building was active. That there were cars using the parking lot doesn't mean that the building is being used as an active church. It just means, as he pointed out, he wanted to park in that parking lot several times as part of his job to observe people, but he didn't want to be disturbed or cause problems. He observed signage for a church, but if you look at the sign, it's a big, heavy sign. It doesn't have the sort of lettering that you change or what we now see, the electronic lettering. There was nothing that showed that that signage was being updated or in any way showed that that building was being used as an active church. And I think that's the question here is, is the building active or is it active as a church? And when you talk about the different buildings in Bloomington, what comes to my mind is every day as I turn into work, caddy corner from our office is a building that has changed hands repeatedly. And for a while, it was the Church of the Broken Chains. It was a church where people who were in motorcycle groups gathered. And that signage remained on that building for several years when it looked more and more deserted. And then it became a vintage store. And when somebody buys a building, you change the signage. But when the building is simply abandoned, signage is going to probably remain. So I do think that there's a distinction here between what Detective Birnbaum saw and whether he established activity or that the building was active as a church on the date in question. Thank you, Your Honors. Thank you, Counsel. We'll take this matter into advice and we'll be in recess for lunch.